UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DARWIN KINSEY,<br><br>   Plaintiff,<br>v.<br><br>NELSON, *et al.*,<br><br>   Defendants. | Case No. 2:21-cv-00188-RFB-BNW<br><br>**SCREENING ORDER** |

Plaintiff, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil rights complaint pursuant to 42 U.S.C. § 1983 and has filed an application to proceed *in forma pauperis*.[1] (ECF Nos. 1, 1-1.) The matter of the filing fee will be temporarily deferred. The Court now screens Plaintiff's civil rights complaint under 28 U.S.C. § 1915A.

I.   **SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and

///

---

[1] Plaintiff filed an updated address on August 6, 2021, indicating that NDOC has transferred Plaintiff to a new address, which appears to be an apartment building in Las Vegas. (ECF No. 3.) According to NDOC records, Plaintiff remains in custody at Southern Desert Correctional Center. Based on this, it appears that Plaintiff remains in NDOC custody, but is currently being housed, perhaps due to COVID protocols, at an apartment building in Las Vegas.

(2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id*.

///

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth."

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.     SCREENING OF COMPLAINT

In the complaint, Plaintiff sues multiple Defendants for events that took place while Plaintiff was incarcerated at High Desert State Prison ("HDSP"). (ECF No. 1-1 at 1.) Plaintiff sues Defendants Nelson, as well as two John Does. (*Id.* at 1-3.) Plaintiff alleges three counts and seeks monetary relief. (*Id.* at 4-9.)

The complaint alleges the following: On November 13, 2019, Plaintiff was placed in a prison van while in leg shackles and handcuffs. (*Id.* at 3.) The prison van did not have any seatbelts. (*Id.*) Officer Nelson backed out at a high rate of speed without looking and hit a prison transport bus. (*Id.* at 3-4.) Plaintiff sustained whiplash to his neck and an injury to his lower back. (*Id.* at 3.) That night, Plaintiff submitted a request for medical attention due to the pain in his back and neck. (*Id.* at 4.)

On November 14, 2019, Plaintiff submitted another request for medical attention. (*Id.* at 5.) That same day, Plaintiff was called down to medical for X-rays. (*Id.*) Plaintiff was then given thirty 200 mg ibuprofen pills and sent back to his unit. (*Id.*) Plaintiff was told to keep submitting medical kites and that he was placed on sick call to see a medical provider. (*Id.*) Although Plaintiff did as he was instructed, he never received a response to his request for medical treatment. (*Id.*)

On March 3, 2020, Plaintiff was transferred to Southern Desert Correctional Center ("SDCC"). (*Id.* at 6.) On May 1, 2020, Plaintiff put in a request for medical treatment describing his ongoing medical issues. (*Id.*) Plaintiff received a response that he was scheduled to see medical but that it would take 6-9 weeks and that, if his condition worsened, he should submit another kite. (*Id.*) On July 16, 2020, Plaintiff submitted another request stating that his pain was getting worse, that it had been eighth months since the accident, and that he was still waiting for medical treatment. (*Id.*) Plaintiff again received a response that he was on sick call and to wait for treatment. (*Id.*) On August 25, 2020, Plaintiff filed another medical kite, and he was again told that it would take 6-9 weeks to be seen by a medical provider. (*Id.*) Plaintiff has been in pain every day since his accident. (*Id.* at 3.)

Based on these allegations, Plaintiff claims that his right to adequate medical treatment under the Eighth Amendment has been violated. (*Id.* at 4-6.) The Court construes this as a claim of deliberate indifference to a serious medical need. Based on the allegations in the complaint, the Court liberally construes the complaint as including a claim of unsafe prison conditions under the Eighth Amendment. The Court will consider these claims in turn.

**A. Unsafe Prison Conditions**

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment imposes duties on prison officials to take reasonable measures to guarantee the safety of inmates and to ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer*, 511 U.S. at 832.

To establish violations of these duties, the prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety. *Id.* at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists, and [the official] must also draw the inference." *Id*. at 837.  Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed. *Id*. at 843.

The Court finds that Plaintiff states a colorable claim of unsafe prison conditions under the Eighth Amendment for purposes of screening.  The Court liberally construes the complaint as alleging that Plaintiff was placed in a prison van with his legs in shackles and his hands in handcuffs. The van did not have any seatbelts.  Officer Nelson knew that the van did not have any seatbelts and that Plaintiff was shackled and would be unable to protect himself in case of an accident.  Despite this knowledge, Nelson recklessly backed up at a high rate of speed without looking at where he was going.  These allegations are sufficient to state a colorable claim on screening.  This claim will proceed against officer Nelson.

### B.  Deliberate Indifference to a Serious Medical Need

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted).  To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id*.  "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id*. (internal quotations omitted).  When a prisoner

5

alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

The Court finds that Plaintiff states a colorable claim of deliberate indifference to a serious medical need. The Court liberally construes the complaint as alleging that while Plaintiff was at HDSP he informed John Doe 1 that he was suffering from severe back and neck pain. John Doe 1 did not take any action to respond to Plaintiff's pain and simply told him to file a kite. Although Plaintiff filed a kite, he never received any treatment. As a result, Plaintiff remained in severe pain.

When Plaintiff was transferred to SDCC, he told John Doe 2 that he continued to experience severe pain in his back and neck. John Doe 2 repeatedly told Plaintiff to file kites and wait for treatment. John Doe 2 did not take any action to respond to Plaintiff's pain or ensure that Plaintiff received treatment. As a result, Plaintiff continued to experience severe pain, and he never received treatment for his neck and back pain. These allegations are sufficient to state a colorable claim on screening. This claim will proceed against John Doe 1 and John Doe 2, when Plaintiff learns their identities.[2]

### III.   CONCLUSION

For the foregoing reasons, it is ordered that a decision on the application to proceed *in forma pauperis* (ECF No. 1) is deferred.

It is further ordered that the Clerk of the Court file Plaintiff's complaint (ECF No. 1-1) and send Plaintiff a courtesy copy of the complaint.

It is further ordered that the Court liberally construes the complaint as including an Eighth Amendment claim of unsafe prison conditions. This claim will proceed against officer Nelson.

---

[2] Although the use of "Doe" to identify a defendant is not favored, flexibility is allowed in some cases where the identity of the parties will not be known prior to filing a complaint but can subsequently be determined through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). If the true identity of any of the Doe Defendant(s) comes to light during discovery, Plaintiff may move to substitute the true names of Doe Defendant(s) to assert claims against the Doe Defendant(s) at that time.

6

It is further ordered that Plaintiff's Eighth Amendment claim of deliberate indifference to a serious medical need will proceed against Defendants John Doe 1 and John Doe 2, when Plaintiff learns their identities.

It is further ordered that Plaintiff shall be provided with a copy of his medical records to keep in his cell on within 30 days of the entering of this order. These records shall remain with Plaintiff during the pendency of this litigation. The Court finds that these records are necessary for Plaintiff to pursue his case and that he is entitled to such records.

It is further ordered that given the nature of the claim(s) that the Court has permitted to proceed, this action is stayed for 90 days to allow Plaintiff and Defendant(s) an opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is filed, or the discovery process begins.  During this 90-day stay period and until the Court lifts the stay, no other pleadings or papers may be filed in this case, and the parties will not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the Court to do so.  The Court will refer this case to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order.  Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General will file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay.  If the parties proceed with this action, the Court will then issue an order setting a date for Defendants to file an answer or other response.  Following the filing of an answer, the Court will issue a scheduling order setting discovery and dispositive motion deadlines.

It is further ordered that "settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve Plaintiff's issues differently.  A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

It is further ordered that if the case does not settle, Plaintiff will be required to pay the full $350.00 filing fee.  This fee cannot be waived, and the fee cannot be refunded once the Court enters an order granting Plaintiff's application to proceed *in forma pauperis*.  If Plaintiff is allowed to proceed *in forma pauperis,* the fee will be paid in installments from his prison trust account.  28

U.S.C. § 1915(b). If Plaintiff is not allowed to proceed *in forma pauperis*, the $350.00 will be due immediately.

It is further ordered that if any party seeks to have this case excluded from the inmate mediation program, that party will file a "motion to exclude case from mediation" no later than 21 days prior to the date set for mediation. The responding party will have 7 days to file a response. No reply will be filed. Thereafter, the Court will issue an order, set the matter for hearing, or both.

It is further ordered that the Clerk of the Court will electronically serve a copy of this order and a copy of Plaintiff's complaint on the Office of the Attorney General of the State of Nevada, by adding the Attorney General of the State of Nevada to the docket sheet. This does not indicate acceptance of service.

It is further ordered that the Attorney General's Office will advise the Court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of Defendants for the purpose of settlement. No defenses or objections, including lack of service, will be waived as a result of the filing of the limited notice of appearance.

DATED THIS 3rd day of January, 2022.

RICHARD F. BOULWARE, II
United States District Court

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DARWIN KINSEY,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>NELSON, *et al.*,<br><br>　　　　　　　　　Defendants. | Case No. 2:21-cv-00188-RFB-BNW<br><br>REPORT OF ATTORNEY GENERAL RE: RESULTS OF 90-DAY STAY |

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL WILL FILE THIS FORM. THE INMATE PLAINTIFF MAY NOT FILE THIS FORM.**

　　On _____ [*the date of the issuance of the screening order*], the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The Court ordered the Office of the Attorney General of the State of Nevada to file a report 90 days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies.

///

///

///

///

///

///

///

///

///

///

**REPORT FORM**

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

\_\_\_\_ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

\_\_\_\_ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

\_\_\_\_ No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

\_\_\_\_ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

\_\_\_\_ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

\_\_\_\_ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

\* \* \* \* \*

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

\_\_\_\_ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

_____ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____      _____
                Print                          Signature

Address: _____      Phone:

         _____      _____

                                          Email:

                                          _____